UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ASSOCIATION OF COMMUNITY ORGANIZATIONS
FOR REFORM NOW; ACORN INSTITUTE, INC.;
And NEW YORK ACORN HOUSING COMPANY,
INC.

CIVIL ACTION NO.

09-CV-4888 (NG)(LB)

Plaintiffs,

versus

UNITED STATES OF AMERICA;
SHAUN DONOVAN, Secretary of the Department
of Housing and Urban Development;
PETER ORSZAG, Director,
Office of Management and Budget; and
TIMOTHY GEITHNER, Secretary of the
Department of Treasury of the United States

Defendants

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER OR AMEND THIS COURT'S DECEMBER 11, 2009 OPINION AND ORDER

### INTRODUCTION

Defendants rely almost exclusively on the recently issued Harshbarger Report [Def. Exh. 1, ECF Doc. 11-1] as the basis of their *Motion to Reconsider or Amend the Court's December 11, 2009 Opinion and Order.* More specifically, they claim that the Report's conclusions that ACORN had "longstanding management weaknesses" and an "internal potential for fraud," [*Id.*] "expressly confirm[s] the very concerns expressed by members of Congress supporting Section 163," and therefore "reinforces the non-punitive basis for Section 163," namely "Congress' purpose in preventing fraud, waste and abuse." Defs' Memo, at pp. 1, 2. However, Defendants' argument contains two fundamental flaws: 1) the Harshbarger Report does not change the fact that the legislative debarring of ACORN from all federal funding constitutes punishment without

1

any adjudication of actual fraud or criminal conduct; and 2) the Harshbarger Report actually supports this Court's conclusion that the congressional bar on funding ACORN is punitive.

## ARGUMENT

### POINT I
### The Harshbarger Report's Factual Conclusions Cannot Alter the Propriety of This Court's Finding That the Legislative Defunding of ACORN Amounts to Unconstitutional Punishment Without Trial

The defendants assert that the question of whether Section 163 is a Bill of Attainder is dependent on whether substantial evidence exists to confirm Congress' view of ACORN. The government misunderstands the basis for this Court's ruling that Section 163 is an unconstitutional Bill of Attainder, which rested not on whether congressional criticisms of ACORN were valid or confirmed by independent reports, but rather on fundamental separation of powers and due process concerns about "trial by legislature." Opinion and Order, dated December 11, 2009 (Dec. 11 Op.) (ECF doc. at 9) at 7 (quoting *United States v. Brown*). As this Court correctly pointed out in its original decision:

> ACORN's critics consider it responsible for fraud, tax evasion, and election violations, and members of Congress have argued that precluding ACORN from federal funding is necessary to protect taxpayer money. ACORN, by contrast, *while acknowledging that it has made mistakes*, characterizes itself as an organization dedicated to helping the poor, and argues that it has been the object of a partisan attack against its mission. *This case does not involve resolution of these contrasting views.* It concerns *only the means Congress may use to effect its goals.* Nor does this case depend upon whether Congress has the right to protect the public treasury from fraud, waste and abuse; it unquestionably does. *The question here is only whether the Constitution allows Congress to declare that a single, named organization is barred from all federal funding in the absence of a trial.*

Dec. 11 Op., at 2 (emphasis added).

Nothing in the Harshbarger Report alters this Court's proper conclusion that the means Congress used to effect its goals—namely declaring that a single, named organization is barred

from all federal funding in the absence of a trial—constitutes a Bill of Attainder. The constitutional defect here is punishing a single organization without either a judicial trial or at least an administrative agency procedure that comports with due process. That defect would not be cured even if the Harshbarger Report in fact "confirmed the very concerns expressed by members of Congress supporting Section 163"—which it emphatically does not. [*See* Point II, *infra*.]

The decisions in the *Lovett*, *Brown* or *Con. Edison* cases relied upon by this Court in its December 11 ruling rendered no judgment as to whether the underlying facts leading to the legislative action in those cases were correct. Under the rationale of those decisions, it would have made no difference had there been independent reports or even purported admissions that Lovett was indeed a subversive, or that Communist Party officials had encouraged unlawful strikes, or that Con. Edison was in fact negligent. Thus, contrary to the defendants' argument in their motion, the constitutional defect in each of these cases was not a lack of evidentiary support for the legislative judgment; rather, the courts' rulings in those cases, as here, relied on the Constitutional requirement that Courts or Administrative agencies such as the PSC determine guilt and prescribe appropriate measures, and not the legislature.

Most of defendants' argument simply rehashes their original argument that the congressional purpose behind Section 163 was regulatory, not punitive. For example, defendants cite *Sabin v. United States*, 541 U.S. 600, 605 (2004) and *Houston v. Williams*, 547 F.3d 1357, 1364 (11th Cir. 2008) for the unremarkable proposition that Congress has the authority to ensure that taxpayer dollars are properly spent, a position which neither this Court's December 11 opinion nor plaintiffs dispute. The county policy challenged in *Houston* prohibited "a class of persons" from being eligible for a federal program based on their status as "a convicted felon and

3

listed sex offender," *id.* at 1360, 1362; in contrast, the instant case challenges a legislative enactment totally barring one named organization and its allies from receiving funds, period. Plaintiffs here do not challenge the legislature's right under the Bill of Attainder Clause to protect the public fisc by barring federal contracts for corporations that have been convicted of crimes, committed fraud, or even have "management weaknesses" (although the latter category might be unconstitutionally vague). The legislature simply cannot, as they did here, single out one organization for such severe treatment. *See also Flemming v. Nestor*, 363 U.S. at 614 (distinguishing between statutes based on "activity or status" versus those targeted at "person or class of persons").

Defendants repeat their argument that Section 163 is only unconstitutional "if there is simply no *conceivable* non-punitive rational basis for the statutes," and claims that protecting federal funds is a conceivable purpose behind this statute. This Court already answered this very argument when it properly pointed out that "Congress' interest in preventing future misconduct does not render the statute regulatory rather than punitive," because deterring future misconduct is a "traditional justification of punishment." Dec. 11 Op., at 13. If any "conceivable" argument that a statute is designed to prevent future misconduct were sufficient to defeat a Bill of Attainder challenge, than *Lovett*, *Brown* and *Consolidated Edison* all were wrongly decided.

For example, the Government claims that unlike the case here, "[N]o similarly direct connection between the legislative concern at issue and the disqualification existed in *Lovett*." Defs' Memo, at 6. This claim is demonstrably false. In *Lovett*, a legislative subcommittee had heard evidence and concluded that Lovett and others were subversive. The government surely cannot claim that there is no "direct connection" between the legislative concern of ensuring that all government employees during wartime are loyal and not subversive, and its disqualification

4

from government employment of those the legislature found to be subversives. The Court held the bar unconstitutional, not because there was no "direct connection" between the legislative concern and the disqualification, but rather because it was not for the legislature to determine guilt and impose the punishment of precluding someone from government employment.

Finally, the government's suggestion that the concerns expressed by members of Congress supporting Section 163 were those reported in the Harshbarger Report—ACORN's "longstanding management weaknesses and internal potential for fraud"—contradicts both the functional nature of the statute and the legislative record. It strains credulity to suggest, as asserted by the government, that Congress took the unprecedented action of totally banning one organization and all related organizations from federal funding for a period of almost three months and now for at least a year, because of concerns about ACORN's "longstanding management weakness" and "internal potential for fraud." Were Congress to cut funding for organizations with "longstanding management weakness," and a "*potential* for fraud," undoubtedly many contractors, not just ACORN, would be excluded. The severity and unprecedented nature of the congressional action taken here belies the government's view that the congressional concerns here were those articulated in the Harshbarger Report. The government cites not a single member of Congress who articulated "management weakness" or "*potential* for fraud" as the reason to take this unprecedented severe action.[1] In fact, all the

---

[1] In footnote 3 on page 3 of the defendants' memorandum, the government quotes two members of Congress, Representatives King and Carter, in support of the proposition that "the facts upon which Congress acted parallel in many respects the facts documented in the Harshbarger Report." The two congressional speeches that they quote prove the opposite.

The government selectively quotes a short excerpt, completely out of context, from Representative King's (R-IA) lengthy (five page) speech on ACORN defunding. *See* 155 Cong. Rec. H9946 (daily ed., Sept. 24, 2009) attached hereto as Exhibit A. No reasonable observer who read both the Harshbarger Report and King's speech could conceivably conclude that "the

facts upon which Congress acted parallel in many respects the facts documented in the Harshbarger Report." Defs' Memo, 3, n. 3. King's speech is fraught with extreme conclusions of criminal and fraudulent activity that is nowhere to be found in the Harshbarger Report. For example, he states: that ACORN staff "helped facilitate child prostitution," H9947; that "there is a culture of that type of corruption, child prostitution, within the doors of ACORN," H9948; that the "biggest problem is ACORN's involvement in corrupting our election process," *id.*; that ACORN "promote[s] fraudulent voter registrations" and have committed "almost a perfect crime" H9948; that "they are a partisan organization that gets out the vote for Democrats," H9949; that ACORN is engaged in "the practice of shaking down lenders," H9950. ("I can't draw a moral distinction between an ACORN shakedown, a Mafia shakedown . . . ." *Id.*); and, that President Obama is "the star of ACORN. He is the lead chief organizer." He has a deep involvement in ACORN . . . he stands with ACORN, and he walks with them all the way through" H9952.

While King does refer briefly to the ACORN (Harshbarger) examination and audit, that defendants quote, he calls it "a joke." H9951. And while he does repeatedly call for many investigations, his view of an investigation is "to drill into ACORN" in order to "shut down everything that is questionable. If there is anything left that has any integrity, I don't know what to do in that situation because I don't know how there would be any entity within ACORN that is not stained by this." H9950. King states "we need to clean up this mess that is ACORN" and states that he and other Republicans have consistently called "for the cleanup of the corrupt ACORN, the criminal enterprise ACORN and all of their affiliates." *Id.* at H9951. That the government cites this King speech as evidence of the non-punitive nature of the defunding provisions, and for the proposition that the facts upon which Congress acted parallel those in the Harshbarger Report, is astounding.

Similarly, the defendants' attempt to analogize Representative Carter's statement with the findings of the Harshbarger Report is ludicrous. Carter's statement quoted by the government that an internal audit was not enough because ACORN had "engaged in self-dealing and aided and abetted the coverup of embezzlement," is a legislator's conclusion that criminal misconduct has in fact occurred. Carter's goal, stated immediately before the snippet quoted by the government is the same as Congressman King's; "busting up as much of it [ACORN] as they can." 155 Cong. Rec. H9787. He says immediately before the selection quoted by the government that "ACORN has evaded taxes, obstructed justice . . ." and immediately after that *inter alia* "ACORN has committed investment fraud," "engaged in racketeering enterprises," and "committed conspiracy to defraud the United States by using taxpayer funds for partisan political activities." *Id.* at 9788. These allegations are a far cry from the Harshbarger's Report finding of "longstanding management weaknesses" and, as Point II illustrates, are directly contradicted by the conclusions of that Report. Indeed, both King's and Carter's statements are indisputably

6

members of Congress who articulated their concerns, stated that they were outraged by ACORN's "criminal enterprise," "systematic fraud" or unlawful partisanship. *See* Dec. 11 Op., at 15-16. It is obvious to any reasonable observer that the unprecedented, total statutory ban on funding to this organization and its subsidiaries, affiliates or allies was based on the conclusion, without any hearing or adjudication, that serious misconduct had in fact occurred; it was not based on concerns about "longstanding management weakness." *See* Dec. 11 Op., at 12.

In sum, the Harshbarger Report—whatever its conclusions—do not alter this Court's holding that Congress may not disbar a single named organization from government funding without a trial.

### POINT II
### The Harshbarger Report Supports the Conclusion that the Congressional Bar On Funding ACORN is Punitive

The defendants selectively quote from the Harshbarger Report. In fact, to the extent relevant, the Harshbarger Report strongly supports this Court's conclusion that Section 163 is punitive.

The Harshbarger Report contains four critical conclusions, all omitted by defendants:

(1) <u>**No finding of illegal or fraudulent ACORN Activity.**</u> The Report "did not find a pattern of intentional, illegal conduct by ACORN staff; in fact, there is no evidence that action, illegal or otherwise, was taken by any ACORN employee on behalf of the videographers." Def. Exh. 1 at 3. Indeed, the Report concluded that "There is significant evidence to support the proposition that the services provided by ACORN [many of which would be cut by Section 163]—including its political efforts on voter registration—*were legitimate and effective. Id.* at 14 (emphasis added).

(2) <u>**Impressive Reform Efforts.**</u> The report repeatedly stresses the significant reforms the ACORN leadership has already achieved and is clearly committed to continuing. "ACORN has been *aggressively* implementing the changes recommended"; Def. Exh. 1 at 38; ACORN's current leadership understands full

---

punitive, reject the whole idea of an ACORN-initiated audit as "a joke" that "isn't going to get it done," and instead seek to "bust up" or "shut down" as much of ACORN as possible.

7

well what must be done, *id.* at 3; "the national organization has pursued a *significant effort* to evaluate and reform its financial and governance structures"; *id.* at 7 the ACORN leadership is aware of these [managerial] issues, and has *initiated action* steps to remedy them. Organization leaders appear committed to effect reform. . . . *Id.* at 10 (emphasis added).

(3) <u>That ACORN and ACORN Housing Are Separate Entities.</u> The Report concluded that "Of particular importance is the relationship between ACORN and ACORN Housing, which, in the video controversy, were inaccurately blended into one. ACORN and ACORN Housing, while united broadly in purpose, are separate entities with separate management. For example, Bertha Lewis, the Chief Executive Officer of ACORN, has no connection whatsoever to ACORN Housing. The two entities have separate office space in every location. ACORN Housing, based in Chicago, has a separate 501(c)(3) board, staff, and funding sources. It is a service entity and, as such, has different training, supervision and reporting systems, designed in part to ensure that there is physical, operational and fiscal separation from ACORN." Def. Exh. 1, at 6.

(4) <u>The Videos Were Edited or Manipulated.</u> With respect to the videos, which served as a focal point for the legislative action herein, the Report found that "the released videos were edited or manipulated by the videographers and/or individual[s] acting on their behalf. . . . Experienced forensic investigators would be able to determine the extent to which the released videos have been manipulated to distort, rather than merely shape, the facts and the conversations, as ACORN alleges." Def. Exh. 1, at 13.

These four conclusions strongly support the Court's holding. First, the Harshbarger Report directly contradicts the numerous members of Congress – including Representatives King and Carter, relied upon by the defendants -- who argued that ACORN should be defunded because it was a criminal conspiracy, and had committed systematic fraud. The Harshbarger Report concludes quite to the contrary, that there is substantial evidence that ACORN's activities were legitimate and effective, that it could find no pattern of international, illegal conduct by ACORN staff, that "several U.S. attorneys found no legal basis upon which to investigate ACORN's voter registration efforts," (Def. Exh. 1, at 2 n. 1), and that ACORN consistently "has won praise" from the national overseers and evaluators "for its tax preparation programming." *Id.* at 36. The Report underscores the Constitution's requirement that guilt and punishment be determined by a judicial or other nonpartisan hearing, and not by a political congressional vote.

8

Second, the Report underscores the parallel Supreme Court jurisprudence and federal agency practice that non-punitive measures require that the affected individuals or groups be afforded the opportunity to avoid the deprivation. Indeed, the Report repeatedly emphasizes the aggressive reform effort and actions that ACORN leadership has already taken to correct past mistakes, which the appropriate federal regulatory disbarment or suspension mechanism would also be required to seriously consider. Congress clearly did not.

Third, the Harshbarger Report emphasizes the separate status and organizational structure of ACORN and ACORN Housing Corp., which Section 163 obliterates in sweeping all ACORN subsidiaries, affiliates or allies within its ambit. A less burdensome, more narrowly tailored non-punitive measure would treat programs and entities separately and not lump them all together. That Congress adopted such a broad statute functionally reflects the position that ACORN is an interlocking criminal enterprise and therefore all of the associated organizations must be engaged in criminal activities and therefore defunded as well – without any acknowledgment of them as separate entities.

Finally, the Harshbarger Report finding that the explosive videos were "edited or manipulated" again underscores the reason the framers of the Constitution outlawed trial by legislature. ACORN is entitled to defend itself from these accusations in an impartial judicial trial or other administrative hearing that accords it a meaningful opportunity to challenge the accusations against it.

### POINT III
### The Passage of Defund ACORN Provisions of the 2010 Appropriations Acts Further Supports This Court's Finding that Section 163 is Punitive

In opposing plaintiffs' motion for a preliminary injunction, defendants argued that Section 163 was non-punitive because it simply was an emergency, "temporary," "time

9

sensitive" withholding of funds for ACORN and its affiliates for a limited two and one half month period. Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunctin (ECF Doc 7) at 17-21. Defendants argued that "[T]ellingly, three of the four full year Fiscal Year 2010 Appropriations Acts that have been enacted since the CR went into effect contain no provisions foreclosing plaintiffs from applying for or receiving federal grants." *Id.* at 17.

Congress has now extended the Continuing Resolution's total ban on ACORN funding for at least until the end of fiscal year 2010, and for multiyear funding streams into future years. Nor is there any definite end to ACORN's debarment.[2] The recent congressional actions which are the subject of plaintiffs' motion to modify or amend the injunction thus undermine and contradict the defendants' argument that Section 163's temporary ban of funding is non-punitive.

## POINT IV
### This Court has the Authority to Enjoin Section 163 and the Recently Enacted Bills of Attainder on a Government-Wide Basis

At the December 4, 2009 oral argument on plaintiffs' motion for a preliminary injunction, the government agreed with plaintiffs' counsel that this Court had the authority to enjoin the implementation of the statute and effect of the statute (Section 163) "on a government wide basis." Transcript of Proceedings Held December 4, 2009 ("Tr."), at 64. That is what plaintiffs seek here. The government's admission however, is in considerable tension with its argument that the Court has no power to enjoin the United States, and that enjoining either OMB or the Treasury Department would not have the practical effect plaintiffs seek. Tr., at 63;

---

[2] At present count, Congress still has pending before it approximately 30 other bills specifically naming ACORN. *See* list attached hereto as Exhibit C.

Defendants' Memorandum of Law in Support of Motion to Reconsider or Amend Judgment, at 7.

Plaintiffs proffer two solutions to this apparent contradiction which do not require this Court to address the novel question of whether the United States itself can be enjoined where a statute mandates a government-wide action which could not be redressed by enjoining any specific agency or agencies (e.g. a statute mandating that no federal agency could employ women or African Americans). Here, OMB and Treasury have the responsibility for instructing and advising agencies on budgetary matters and expending government monies, and, as such, can be enjoined from enforcing Section 163 and other challenged appropriation enactments. This Court has and can enjoin OMB from enforcing its Section 163 memorandum. It has the authority to go further if necessary, and mandate that OMB send notification to every agency that received its prior memo (a) rescinding the memo; (b) annexing this Court's order; and (c) instructing agencies that they cannot deny ACORN or any subsidiary, affiliated or allied organization any funds, or any award of future funding, nor refuse to process and review an application for such funds or breach *any* ongoing agreement with such organization, solely because of Section 163 or any of the recent statutory appropriation enactments challenged in this action.

Finally, if this Court deems it necessary, plaintiffs are willing to amend the complaint to name as defendants each and every federal agency. Plaintiffs have no particular interest in enjoining the United States itself, but simply in enjoining the operation and effect of the challenged statutory provisions on a government-wide basis, which defendants agree this Court has the authority to do.

## CONCLUSION

For the reasons stated above, the Court should deny Defendants' Motion to Reconsider or Amend its December 11, 2009 Opinion and Order.

Dated: New York, New York
December 18, 2009

>Respectfully submitted,
>Center for Constitutional Rights
>
>By: /s/ Darius Charney
>
>Darius Charney (DC1619)
>William Quigley (Legal Director)
>666 Broadway, 7th Floor
>New York, NY 10012
>Tel.: (212) 614-6475; (212) 614-6427
>Fax: (212) 614-6499
>
>*CCR Cooperating Attorneys*
>
>Jules Lobel (admitted in NY & this court JL8780)
>3900 Forbes Avenue
>Pittsburgh, PA 15260
>
>Goodman & Hurwitz, P.C.
>William Goodman (admitted in NY & this court WG1241)
>Julie H. Hurwitz
>1394 East Jefferson
>Detroit, Michigan 48207
>313.567.6170
>
>Arthur Z. Schwartz (AZ52683)
>275 Seventh Avenue
>New York, NY 10001